IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


EUGENE GASTIL,                    )
                                  )
                Plaintiff,        )
                                  )
vs.                               )        Case No. 07-1188-MLB
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of                   )
Social Security,                  )
                                  )
                Defendant.        )
_____    )


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  <u>Glenn</u>, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

2

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993).
At step five, the burden shifts to the Commissioner to show that
the claimant can perform other work that exists in the national
economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987
F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this
burden if the decision is supported by substantial evidence.
Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

On October 26, 2006, administrative law judge (ALJ) Edmund
C. Warre issued his decision (R. at 11-24).  Plaintiff alleged
that his disability began on May 24, 2004 (R. at 11).  Plaintiff
meets the insured status requirement for disability insurance
through September 30, 2007 (R. at 13).  At step one, the ALJ

found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of May 24, 2004 (R. at 13). At step two, the ALJ determined that plaintiff had the following severe impairments: status/post right ankle fracture, status/post left hand injury, a left shoulder injury, a congenital kidney disorder, an adjustment disorder, a mixed personality disorder, dyslexia, attention deficit hyperactivity disorder, borderline mental retardation, and alcohol abuse in remission (R. at 13). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 13-17).  After establishing plaintiff's RFC, the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 22). At step five, the ALJ, based on vocational expert (VE) testimony, found that there are a significant number of jobs in both the national and regional economies which plaintiff is capable of performing (R. at 23).  Therefore, the ALJ concluded that plaintiff is not disabled (R. at 24).

**III.  Did the ALJ err by failing to include in plaintiff's RFC certain physical and mental limitations set forth by medical sources?**

According to SSR 96-8p the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies

or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court

cannot adequately assess whether relevant evidence supports the
ALJ's RFC determination.   Such bare conclusions are beyond
meaningful judicial review.   <u>Brown v. Commissioner of the Social
Security Administration</u>, 245 F. Supp.2d 1175, 1187 (D. Kan.
2003).

The first issue pertains to the ALJ's mental RFC findings.
Dr. Larry Boll, a licensed psychologist, performed a consultative
examination on the plaintiff on September 1, 2005.   In regards to
plaintiff's ability to work, Dr. Boll stated the following:

> **I do see him as being able to comprehend and
> follow simple instructions as well as perform
> some simple, routine, repetitive task** if he
> can handle it physically.  With an
> appropriate task, I think he should be able
> to sustain his attention, and he should also
> be able to maintain reasonable attendance
> standards as long as he is not incapacitated
> by his physical/medical problems.  He related
> very well with this examine[r] and **should be
> able to relate adequately with others in an
> accepting and supportive work environment.
> He may have some problem dealing with a more
> authoritarian or critical supervisor.**  He
> seemed to handle the emotional demands of the
> testing well, and I think **he should be able
> to deal with work pressures in an appropriate
> and emotionally adaptive way as long as he is
> assigned an appropriate task and placed in an
> accepting and supportive work environment.  I
> think he would have some difficulty
> exercising acceptable judgments concerning
> work functions outside of a fairly structured
> or supervised work environment.**

(R. at 160, emphasis added).   The ALJ summarized the findings of
Dr. Boll, and stated that although not a treating source, Dr.

Boll's opinion is well supported by objective testing and his trained observations.  The ALJ further indicated that Dr. Boll's opinion is consistent with plaintiff's previous work performance and thus has been given substantial weight in determining that the plaintiff is capable of understanding, remembering, and carrying out simple instructions (R. at 20).

The ALJ's RFC findings stated that as a result of plaintiff's mental disorder, including borderline intellectual functioning, plaintiff is able to "understand, remember, and carry out only simple instructions" (R. at 17).[1]  No other mental limitations were included in plaintiff's RFC by the ALJ.  The ALJ's limitation that plaintiff is able to understand, remember, and carry out only simple instructions is similar to Dr. Boll's finding that plaintiff can comprehend and follow simple instructions and perform some simple, routine, repetitive task. However, without explanation, the ALJ failed to include any of the other limitations set forth by Dr. Boll in plaintiff's RFC: (1) plaintiff can relate adequately with others in an accepting

_____

[1]A mental RFC assessment completed by Dr. Schloesser on September 13, 2005 found that plaintiff was moderately limited in only two categories, the ability to understand and remember detailed instructions, and the ability to carry out detailed instructions (Exhibit 5F, R. at 177-178).  Dr. Schloesser stated that plaintiff has the ability to understand, carry out and follow simple instructions (Exhibit 5F, R. at 181).  The ALJ stated in his decision that his RFC findings are "different" from the state agency medical assessments in exhibits 5F and 7F (R. at 22).  However, the ALJ's mental RFC limitations match those reported by Dr. Schloesser in Exhibit 5F.

and supportive work environment, (2) plaintiff may have some problem dealing with a more authoritarian or critical supervisor, (3) plaintiff should be able to deal with work pressures in an appropriate and emotionally adaptive way as long as he is assigned an appropriate task and placed in an accepting and supportive work environment, and (4) plaintiff would have some difficulty exercising acceptable judgments concerning work functions outside of a fairly structured or supervised work environment.  The failure to include these limitations makes little sense in light of the ALJ's statement that "Dr. Boll's opinion is well supported by objective testing and his trained observations" and that Dr. Boll's "opinion is consistent with the claimant's previous work performance" (R. at 20).

SSR 96-8p states that when an RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  The ALJ offered no explanation for not adopting most of the limitations set forth by Dr. Boll, even though the ALJ indicated that Dr. Boll's opinions are well supported by objective testing and his trained observations. Therefore, this case shall be remanded in order for the ALJ to comply with the requirements of SSR 96-8p in regards to the opinions of Dr. Boll.

Defendant argues that some of the limitations in Dr. Boll's report which were not included in the ALJ's RFC findings for the

9

plaintiff are inconsistent with the RFC findings of Dr. Brewer, who opined that plaintiff had no limitation in the ability to sustain an ordinary routine without special supervision or to make simple work-related decisions (Doc. 10 at 21; R. at 233). This argument was not made by the ALJ in his decision. An ALJ's decision should be evaluated based solely on the reasons stated in the decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action. Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985). A reviewing court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action. Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

Furthermore, the ALJ reviewed the RFC opinions of Dr. Brewer and found that his opinions were not supported by Dr. Brewer's objective findings. The ALJ further found that Dr. Brewer's opinions were not consistent with Dr. Brewer's records or with Comcare therapist records, which showed similar objective findings. The ALJ stated that Dr. Brewer's opinions were not

10

consistent with plaintiff's daily activities.  He also found that Dr. Brewer's opinions were not supported by the findings of other medical sources.  For these reasons, the ALJ did not give either controlling or substantial weight to Dr. Brewer's opinions (R. at 21-22).  Thus, contrary to the argument put forward in defendant's brief, the ALJ expressly failed to give either controlling or substantial weight to any of Dr. Brewer's opinions concerning plaintiff's RFC.  At no point did the ALJ rely on any of Dr. Brewer's opinions about plaintiff's RFC as a basis to discount any of the limitations set forth by Dr. Boll in his report.

The ALJ gave little weight to the RFC findings of Dr. Brewer, plaintiff's treating psychiatrist, and also gave little weight to the opinions of Dr. Reiswig, plaintiff's treating physician, who opined on numerous occasions that plaintiff was disabled because of depression, anxiety and learning disabilities (R. at 147, 237).  When this case is remanded in order to determine what weight should be given to the opinions of Dr. Boll, the ALJ must not consider the opinions of Dr. Brewer and Dr. Reiswig, plaintiff's treatment providers, in isolation, but they must be examined in light of the entire evidentiary record, including the opinions and assessments of other medical sources, including Dr. Boll.  The court is concerned with the necessarily incremental effect of each individual medical report or opinion

by a treatment provider or medical consultant on the aggregate
assessment of the evidentiary record, and, in particular, on the
evaluation of reports and opinions of other treatment providers
and medical consultants, and the need for the ALJ to take this
into consideration.  <u>Lackey v. Barnhart</u>, 127 Fed. Appx. 455, 459
(10th Cir. April 5, 2005).  For example, Dr. Brewer found that
plaintiff had moderate limitations in the ability to accept
instructions and respond appropriately to criticism from
supervisors (R. at 234).  Dr. Boll found that plaintiff may have
some problems dealing with a more authoritarian or critical
supervisor (R. at 160).  Thus, on this issue, the opinions of Dr.
Brewer and Dr. Boll are similar.  Dr. Brewer opined that
plaintiff would have moderate limitations in: (1) the ability to
work in coordination with or proximity to others without being
distracted by them, (2) the ability to interact appropriately
with the general public, and (3) the ability to get along with
coworkers or peers without distracting them or exhibiting
behavioral extremes (R. at 233-234).  Dr. Boll found that
plaintiff should be able to relate adequately with others, but
only in an accepting and supportive work environment (R. at 160).
Thus, plaintiff might have difficulty relating adequately with
others if the work environment was not accepting or supportive.
Therefore, when this case is remanded, the ALJ shall not consider
the opinions of the medical sources, including Drs. Boll, Brewer

and Reiswig in isolation, but in light of the opinions of the
other medical sources.

Finally, the court would note that Dr. Brewer stated in his
RFC assessment on August 25, 2006 that plaintiff's main
impairments have to do with temper outbursts, low frustration
tolerance, short attention span, and immaturity (R. at 235). The
ALJ found that Dr. Brewer's opinions were not consistent with the
treatment records, including the treatment records of Dr. Brewer
(R. at 21). However, on March 29, 2006, Dr. Brewer's notes state
that plaintiff's insight and judgment are somewhat limited and
impulse control is barely adequate, and he has had times when he
hasn't been able to control impulses which resulted in domestic
violence charges (R. at 221). Treatment notes on June 30, 2006
and August 14, 2006 indicated plaintiff's insight and judgment
were poor in certain areas (R. at 208, 211). The treatment plans
of March 9, 2006 and June 7, 2006 stated that the primary
treatment was for impulse control disorder evidenced by intense
anger outbursts, becoming violent and being unable to control the
outbursts (R. at 218, 229-230). A treatment note from December
7, 2005 stated that plaintiff has "a history of anger outburst in
response to negative statements from others" (R. at 165). The
intake summary, dated December 1, 2005, noted that plaintiff had
pulled a knife on his brother, a girlfriend had obtained a
restraining order against him because she felt like he was

13

threatening her, and a former girlfriend had also accused him of
threatening her.  However, plaintiff stated that he does not
believe he is threatening to women, and does not understand why
these women have reacted this way to him (R. at 170).  Thus, the
medical record does provide evidence of temper outbursts,
problems with impulse control, and limited insight and judgment.[2]

The ALJ further found that the treatment records show that
plaintiff has "only slightly diminished concentration and
attention" (R. at 21).  The treatment notes of June 30, 2006 and
August 14, 2006 state that plaintiff's attention and
concentration were slightly diminished (R. at 208, 211).
However, Dr. Brewer's treatment note of May 8, 2006 states that
plaintiff's "concentration was grossly intact, but he does seem
to be one who has trouble sustaining concentration for longer
periods of time" (R. at 216, emphasis added).  On March 29, 2006,
Dr. Brewer noted that although plaintiff's concentration was
pretty good, his school records show "he can have difficulty
sustaining concentration" (R. at 221, emphasis added).  These
treatment notes thus provide some support for Dr. Brewer's

_____

[2]The ALJ stated that the record showed "significant
improvement in temper control" as a result of medication (R. at
14).  In fact, the report cited to by the ALJ states that the
medication "does help him feel less irritable and he is able to
control his temper better" (R. at 207; Exh. 8F/87).  The report
does not mention a significant improvement in temper control.
Dr. Brewer's notes go on to state that plaintiff's mood is more
stable, but that plaintiff is still having "some residual
irritability and temper outbursts" (R. at 207, 210).

subsequent finding that plaintiff has a marked limitation in the "ability to maintain attention and concentration <u>for extended periods</u>" (R. at 233, emphasis added).  On remand, the ALJ shall carefully consider all of the medical records, including the treatment notes of Dr. Brewer and Comcare that provide some support for the opinions of Dr. Brewer, in addition to the medical treatment records that may not support the opinions of Dr. Brewer.

The second issue regarding the ALJ's RFC findings pertains to the medical records indicating limitations in plaintiff's ability to handle and finger with his dominant left hand.  Dr. Henderson performed a consultative examination on the plaintiff on August 18, 2005.  In his report, he found that plaintiff has decreased grip and fist on the left hand, interosseous atrophy was noted, and he found that plaintiff was slower picking up a coin, buttoning a button, or opening a door with his left hand (R. at 151).  Dr. Henderson found diminished sensation in the fingers on the left hand, although gross motor function was normal (R. at 152).  He concluded that plaintiff had interosseous atrophy in the left hand with diminished sensation and decreased dexterity in the dominant left hand (R. at 153).  Dr. Henderson's report included a radiology report on plaintiff's left hand (R. at 154).  The state agency physical RFC assessment concluded, based on the record, that plaintiff was limited to occasional

handling and fingering on the left secondary to a mild decrease in grip and dexterity from his left hand fracture (R. at 201). This RFC assessment expressly referenced the findings of Dr. Henderson in regards to plaintiff's left hand (R. at 199).

The ALJ failed to indicate what weight, if any, he gave to these findings by the state agency medical consultants.  The ALJ did not even mention the limitations on handling or fingering opined by the state agency consultants, and did not include in his RFC findings any limitations in plaintiff's ability to handle or finger.  According to SSR 96-8p, the ALJ must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why those opinions were not adopted.  In the case of Victory v. Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005), the court indicated that the ALJ made no mention of Dr. Hale's opinions and gave no reason for disregarding his opinions. The court held that this was clear legal error.[3]  The ALJ in this

---

[3]Although an ALJ is not required to discuss every piece of evidence, an ALJ, in addition to discussing the evidence supporting his decision, must also discuss significant probative evidence he rejects.  Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  It is reversible error for the ALJ not to discuss uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects.  Grogan v. Barnhart, 399 F.3d 1257, 1266 (10th Cir. 2005).  An ALJ must evaluate every medical opinion in the record, although the weight given to each opinion will vary according to the relationship between the disability claimant and the medical professional. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  Even on issues reserved to the Commissioner, including the RFC

case (Gastil) did not mention the limitations on fingering and
handling opined by the state agency medical consultants, and did
not indicate why he did not adopt these opinions.  No medical
opinion in the record contradicts or disputes their findings.

Without even mentioning the limitations on handling or
fingering in the state agency RFC assessment, the ALJ simply
stated that his RFC findings were "different" than those of the
state agency medical consultants.  (However, as previously noted,
the ALJ's mental RFC findings matched those of the state agency
psychological consultant.)  The ALJ then stated that his RFC
findings were based on all the evidence, including evidence not
available to the nonexamining state agency medical consultants
(R. at 22).  The court finds that this conclusory statement by
the ALJ, without any mention of the limitations set forth in the
state agency assessment, or reference to any evidence, provides
no explanation for not including the limitations on handling and

-------------------

determination and the ultimate issue of disability, opinions from
any medical source **"must never be ignored"** (emphasis added).
Social Security Ruling (SSR) 96-5p (Medical Source Opinions on
Issues Reserved to the Commissioner) 1996 WL 374183 at *2-3.
     Section 404.1527(f)(2)(i) states that ALJ's must consider
findings of nonexamining state agency medical and psychological
consultants.  Furthermore, 404.1527(f)(2)(ii) states that unless
the treating source opinion is given controlling weight (which
did not occur in this case), the ALJ "must" explain in the
decision the weight given to the opinions of state agency medical
or psychological consultants.  SSR 96-6p also states that ALJs
may not ignore the opinions of state agency consultants, and must
explain the weight given to these opinions in their decisions.
1996 WL 374180 at *1, 2.

fingering opined by the state agency medical consultants, who relied on the consultative examination of Dr. Henderson. Therefore, on remand, the ALJ shall be required to comply with the requirements of SSR 96-8p in regards to these opinions by the state agency medical consultants.

As argued by the defendant in his brief, the ALJ, in assessing plaintiff's credibility, found plaintiff's alleged limitations not fully credible, noting that he fishes, hunts, plays pool, bingo, video games, and gambles; the ALJ indicated that these activities require significant use of the hands (R. at 18). The ALJ also noted that plaintiff's hand injury had not prevented plaintiff from working in the past (R. at 19, 22). The ALJ discussed Dr. Henderson's report concerning limitations with plaintiff's left hand, and found that plaintiff's shoulder, hand and lower extremity impairments credibly restrict him from lifting more than 10 pounds frequently and 20 pounds occasionally (R. at 22). However, in finding plaintiff's allegations of limitations regarding his left hand not fully credible, the ALJ failed to discuss or indicate what weight, if any, he gave to the medical opinions of the state agency medical consultants. When an ALJ fails to address medical evidence that supports claimant's testimony, the ALJ cannot dismiss the claimant's testimony as not credible. Grogan, 399 F.3d at 1266.

The state agency consultants, citing to Dr. Henderson's

report, found that plaintiff was limited to occasional handling or fingering with the dominant left hand.  "Occasionally" is defined in the <u>Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles</u> (SCO) (U.S. Dept. of Labor 1993 at C-3) as an activity that occurs up to 1/3 of the time.  The issue before the ALJ is whether plaintiff can perform the requisite physical and mental activities on a full-time basis.  <u>Hayman v. Apfel</u>, 1998 WL 458575 at *2 (10th Cir. Aug. 4, 1998).  For purposes of step five, an RFC assessment is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A regular and continuing basis means 8 hours a day, 5 days a week, or an equivalent work schedule.  SSR 96-8p, 1996 WL 374184 at *1,2, and 8 n.2.

Even if the plaintiff can engage in various activities that require significant use of his hands, as found by the ALJ, it is unclear whether plaintiff's ability to engage in these activities indicates that plaintiff can handle and finger with his left hand more than occasionally, or more than 1/3 of the time, in an 8 hour workday.  That is why it is critical for the ALJ to discuss the medical evidence pertaining to plaintiff's ability to handle and finger, and determine what weight to give that evidence in light of all the evidence in this case.  In his testimony, the vocational expert (VE) testified that:

19

> I would be most concerned about the ability
> to grasp which would be handling.  If he has
> significant handling problems or unable to do
> that more than occasionally it would
> eliminate those jobs I listed.

(R. at 281).[4]  The ALJ relied on the VE testimony that plaintiff

could perform the jobs of house cleaner, cooler tender, final

assembler, and a document preparer (R. at 23).  Thus, it is

critical for the ALJ to weigh the medical opinion evidence

regarding plaintiff's limitations in handling and fingering, and

determine, in light of all the evidence, what weight to accord to

those opinions.  If the ALJ finds that plaintiff has limitations

in handling or fingering, then those limitations must be included

in plaintiff's RFC, and those limitations provided to a VE in

---

[4]Furthermore, SSR 83-10, 1983 WL 31251 at *5-6; SSR 83-14,
1983 WL 31254 at **2,4,5; SSR 85-15, 1985 WL 56857 at *7; and SSR
96-9p, 1996 WL 374185 at *8 indicate the importance of handling
for all types of work, including light work, and fingering for
most sedentary work and certain other types of work.  Lucas v.
Barnhart, Case No. 05-1113, Doc. 13 at 12-17 (D. Kan. Apr. 25,
2006).  In the case of Tavarez v. Commissioner of Social
Security, 138 Fed. Appx. 327 (1st Cir. June 30, 2005), the ALJ
included in plaintiff's RFC that he could not engage in frequent
bilateral handling, fingering, and manipulating.  Relying on the
grids, the ALJ found that plaintiff could perform medium work
Id. at 328, 329.  The court reviewed both SSR 83-14 and SSR 85-
15, and held as follows:

> Since at least the ability to handle is
> required for most jobs, it seems obvious to
> us that the ALJ should have consulted some
> expert source to determine what kinds of jobs
> remained for a person incapable of frequently
> engaging in such activity.

Id. at 330.

order to determine if plaintiff can perform a significant number
of other jobs in the national economy at step five.

**IV.  Did the ALJ err in his credibility analysis?**

A reviewing court does not weigh the evidence and may not
substitute its discretion for that of the agency.  Credibility
determinations are peculiarly the province of the finder of fact,
and a court will not upset such determinations when supported by
substantial evidence.  However, findings as to credibility should
be closely and affirmatively linked to substantial evidence and
not just a conclusion in the guise of findings.  Kepler v.
Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ
cannot ignore evidence favorable to the plaintiff.  Owen v.
Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require
a formalistic factor-by-factor recitation of the evidence.  So
long as the ALJ sets forth the specific evidence he relies on in
evaluating the claimant's credibility, the ALJ will be deemed to
have satisfied the requirements set forth in Kepler.  White v.
Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel,
206 F.3d 1368, 1372 (10th Cir. 2000).  An ALJ must therefore
explain and support with substantial evidence which part(s) of
claimant's testimony he did not believe and why.  McGoffin v.
Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for
the ALJ to use standard boilerplate language which fails to set

forth the specific evidence the ALJ considered in determining
that a claimant's complaints were not credible.  Hardman v.
Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand,
an ALJ's credibility determination which does not rest on mere
boilerplate language, but which is linked to specific findings of
fact fairly derived from the record, will be affirmed by the
court.  White, 287 F.3d at 909-910.

The court has determined that the ALJ failed to comply with
SSR 96-8p by failing to indicate why he did not adopt some of the
limitations opined by various medical sources.  The ALJ has been
further directed not to consider the medical source opinions in
isolation, but in light of all the medical treatment notes, and
the opinions of other medical sources.  Therefore, on remand, the
ALJ shall reevaluate plaintiff's credibility in light of all the
evidence, including the opinions of Dr. Reiswig, Dr. Brewer, Dr.
Boll, Dr. Henderson, and the state agency medical consultants who
limited plaintiff to occasional handling and fingering.

Furthermore, on remand, the ALJ shall keep in mind that
although the nature of daily activities (including plaintiff's
activities that involve significant use of his hands) is one of
many factors to be considered by the ALJ when determining the
credibility of testimony regarding pain or limitations, Thompson
v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must
keep in mind that the sporadic performance of household tasks or

work does not establish that a person is capable of engaging in substantial gainful activity.  Thompson, 987 F.2d at 1490; see Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983)(the fact that claimant admitted to working in his yard, performed a few household tasks, worked on cars, and took occasional trips was found by the court to be activities not conducted on a regular basis and did not involve prolonged physical activity; while this evidence may be considered along with medical testimony in the determination of whether a party is entitled to disability benefits, such diversions do not establish, without more evidence, that a person is able to engage in substantial gainful activity).  One does not need to be utterly or totally incapacitated in order to be disabled.  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Jones v. Sullivan, 804 F. Supp. 1398, 1405 (D. Kan. 1992).  Therefore, consideration of plaintiff's daily activities can and should be considered when analyzing plaintiff's claims of pain or limitations, but should not be relied on, without consideration of the medical opinion evidence, including the opinions of the state agency medical consultants, to establish that a person is able to engage in substantial gainful activity.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing and

other chores.   The ALJ concluded that claimant's allegations of

disabling pain were inconsistent with her reports of her normal

daily activities and were therefore not deemed credible.   The

court found that substantial evidence did not support this

conclusion, holding as follows:

> The fact that Draper tries to maintain her
> home and does her best to engage in ordinary
> life activities is not inconsistent with her
> complaints of pain, and in no way directs a
> finding that she is able to engage in light
> work.

Draper, 425 F.3d at 1131.

IT IS THEREFORE RECOMMENDED that the decision of the

Commissioner be reversed, and that the case be remanded for

further proceedings (sentence four remand) for the reasons set

forth above.

Copies of this recommendation and report shall be provided

to counsel of record for the parties.   Pursuant to 28 U.S.C. §

636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule

72.1.4, the parties may serve and file written objections to the

recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on February 27, 2008.

s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge